# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| RUST-OLEUM CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| RADIENZ LIVING CHICAGO, LLC f/k/a | ) |
| NEW U.S. NONWOVENS, LLC; | ) |
| RADIENZ LIVING, LLC f/k/a | ) |
| NEW U.S. NONWOVENS, LLC; | ) |
| AWESOME PRODUCTS, INC. | ) |
| | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Comes Plaintiff, RUST-OLEUM CORPORATION ("Rust-Oleum"), through counsel, and for its Complaint, states as follows:

### Nature of the Case

1. This case is about the unlawful sale and retention of Rust-Oleum's property. Rust-Oleum shipped certain goods to Radienz Living Chicago, LLC's or Radienz Living, LLC's (collectively "Radienz Defendants") manufacturing facility in Ludlow, Kentucky for processing, and Radienz Living Chicago, LLC or Radienz Living, LLC sold the products to Awesome Products, Inc. as part of a larger sale of the manufacturing facility. Defendants never had, nor have they obtained any legal title to, or ownership of, the goods as Radienz Defendants never had any title to, or ownership interest in, the goods and Awesome Products knew or should have known prior to its purchase that Radienz Defendants did not own the withheld goods. Despite a lack of ownership, Defendants refuse to return the goods or compensate Rust-Oleum for the goods. As a

result of Defendants' actions, Rust-Oleum files this Complaint alleging claims for conversion, unjust enrichment, and bailment, and requesting a trial by jury.

## THE PARTIES

2. Plaintiff Rust-Oleum is a corporation organized under the laws of the State of Delaware, with its principal place of business in Vernon Hills, Illinois.

3. Rust-Oleum manufactures and sells consumer and industrial paints, coatings, sealants, and other cleaning and cleaning-related products.

4. Defendant Radienz Living Chicago, LLC f/k/a New U.S. Nonwovens, LLC ("Radienz Chicago") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Mount Prospect, Illinois.

5. Radienz Chicago manufactures home and personal care products for sale, and it also assembles and manufactures certain private-label products for companies like Rust-Oleum.

6. Defendant Radienz Living, LLC f/k/a New U.S. Nonwovens, LLC ("Radienz") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Melville, New York.

7. Radienz manufactures home and personal care products for sale, and it also assembles and manufactures certain private-label products for companies like Rust-Oleum.

8. Awesome Products, Inc. ("Awesome Products") is a corporation organized under the laws of the State of California, with its principal place of business in Buena Park, California.

9. Upon information and belief, Awesome Products owns or operates manufacturing facilities in Ludlow, Kentucky.

2

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332, as it arises between citizens of different states and the amount in controversy exceeds $75,000.01, exclusive of interests and costs.

11. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because Defendants transact business and contracted to supply certain services in Kentucky through a manufacturing facility located in Ludlow, Kentucky, which is within the territorial boundaries of this judicial district.

12. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred within the territorial boundaries of this judicial district, and the property that is at issue in the action is situated within the territorial boundaries of this judicial district.

## FACTUAL ALLEGATIONS

**Radienz Defendants Business and the Ludlow Facility**

13. Radienz Chicago or Radienz (collectively "Radienz Defendants") owned or operated a home and personal care products assembly and manufacturing facility in Ludlow, Kentucky (the "Ludlow Facility").

14. The Ludlow Facility specializes, among other things, in producing liquid private-label products for companies like Rust-Oleum.

15. The assembly and manufacturing process that takes place at the Ludlow Facility includes: receiving non-liquid raw packing materials like bottles, cartons, caps, triggers, and labels (hereafter "packaging materials"); assembling the packaging materials; and filling the assembled packing materials with a particular liquid solution. Radienz Defendants publicly advertised that it

provided "customers with private label solutions and contract manufacturing services for production."

**Radienz Defendants and Rust-Oleum's Business Relationship**

16. Beginning in October of 2018 Rust-Oleum and Radienz Defendants entered into a business relationship, whereby Radienz Defendant assembled and manufactured certain liquid Rust-Oleum products and Rust-Oleum branded products, which Rust-Oleum would then purchase from Radienz Defendants to sell to its own customers.

17. At times throughout their relationship, Rust-Oluem would purchase some of the packaging materials from other vendors and ship those packaging materials to Radienz Defendants' Ludlow Facility for assembly and manufacturing while at other times Radienz Defendants would use its own stock of packaging materials for purpose of performing its assembly and manufacturing services for Rust-Oleum.

18. Beginning in or around May of 2022, at Radienz Defendants request, Rust-Oleum and Radienz Defendants altered the terms of their relationship, whereby Rust-Oleum began purchasing all packaging materials to be used in Radienz Defendant's assembly and manufacturing process from other vendors and shipping those materials to Radienz Defendants' Ludlow Facility directly for assembly and manufacturing.

19. At or around the same time, Radienz Defendants demanded that Rust-Oleum purchase certain inventory of packaging materials that Radienz Defendants already had on hand at its Ludlow Facility that it had sourced independently.

20. At all relevant times, Rust-Oleum was the owner of the packaging materials it purchased from outside vendors and sent to the Ludlow Facility.

21. At all relevant times, Radienz Defendants never purchased the packaging materials from Rust-Oleum, nor offered any consideration for the packaging materials, but merely provided private labeling and contract manufacturing services to Rust Oleum.

22. Only after Radienz Defendants completed the assembly and manufacturing process did Radienz Defendants bill Rust-Oleum for its private labeling and manufacturing services.

23. Radienz Defendants' billing to Rust Oleum comprised the cost of the labor Radienz Defendants expended to complete the assembly and manufacturing process, the cost of the solution, and any additional overhead or profit associated with private labeling.

24. Radienz Defendants' billing to Rust Oleum did not include the cost of the packaging materials that Rust-Oleum purchased from other vendors and had shipped to the Ludlow Facility.

25. To date, $562,108.25 in packaging materials Rust-Oleum purchased and shipped to Ludlow Facility remain at the Ludlow Facility, including:

    a. $60,312.39 of triggers (Approximately 235,510 triggers);

    b. $106,363.96 of corrugated cartons and/or dividers (Approximately 142,265 corrugated cartons and 13,766 dividers);

    c. $98,875.20 of labels (Approximately 1,125,657 labels);

    d. $84,831.90 of child resistant caps (Approximately 984,515 child resistant caps); and

    e. $211,724.80 of bottles (Approximately 494,246 bottles).

(hereafter collectively the "Withheld Goods").

26. The labels included in the Withheld Goods include Rust-Oleum's registered trademarks and those of its licensors.

27. The bottle, color, shape and appearance are distinctive to Rust Oleum's line of products.

28. The Withheld Goods have always been, and remain, Rust-Oleum's property.

**Awesome Products Purchase of the Ludlow Facility**

29. Upon information and belief, at the time Radienz Defendants requested a change in the nature of its and Rust-Oleum's relationship so that Rust-Oleum would purchase all packaging materials and ship them to the Ludlow Facility, *see paragraph 18*, Radienz Defendants were in the process of soliciting bids to sell portions of its business, including the Ludlow Facility, or had already entered into a tentative or final agreement to sell the Ludlow Facility.

30. Upon information and belief, at the time Radienz Defendants demanded that Rust-Oleum purchase certain inventory of packaging materials that Radienz Defendants already had on hand at its Ludlow Facility that it had sourced independently, *see paragraph 19*, Radienz Defendants were in the process of soliciting bids to sell portions of its business, including the Ludlow Facility, or had already entered into a tentative or final agreement to sell the Ludlow Facility.

31. Upon information and belief, Awesome Products purchased the Ludlow Facility from Radienz Defendants.

32. At the time of Awesome Products' purchase of the Ludlow Facility, the Withheld Goods were in Radienz Defendants' physical possession at the Ludlow Facility.

33. Upon information and belief, the Withheld Goods were shipped in boxes or other containers with information indicating that they had been purchased by Rust-Oleum and shipped to the Ludlow Facility.

34. Upon information and belief, Radienz Defendants maintained packaging and shipping information identifying Rust-Oleum as the purchaser of the Withheld Goods and it provided, at times, bills of lading to Rust-Oleum acknowledging receipt of the Withheld Goods.

35. As such, due to the nature of the Withheld Goods and the advertised nature of Radienz Defendants' business, Awesome Products had actual or constructive knowledge of Radienz Defendants' lack of title to the Withheld Goods and Rust Oleum's ownership of such goods.

**Demand for Return and Notice of Cure**

36. On or about August 26, 2022, Rust-Oleum learned that Radienz Defendants had sold the Ludlow Facility to Awesome Products.

37. On or about September 21, 2022, Awesome Products notified Rust-Oleum that it would be ceasing operations, possibly permanently, at the Ludlow Facility.

38. At the same time, Rust-Oleum notified Awesome Products that its production process was being impacted given Awesome Products' decision to cease operations at the Ludlow Facility.

39. At the same time, Rust-Oleum demanded that Awesome Products release and/or return the Withheld Goods.

40. Awesome Products has refused, and continues to refuse to return the Withheld Goods claiming that it purchased the Withheld Goods as part of its purchase of the Ludlow Facility.

41. On or about November 14, 2022, Rust-Oleum notified Awesome Products that it would attempt to cover its loss of the Withheld Goods by replacing the Withheld Goods with other, similar packaging materials.

42. On or about November 15, 2022, Rust-Oleum notified Radienz Defendants that it would attempt to cover its loss of the Withheld Goods by replacing the Withheld Goods with other, similar packaging materials.

43. To date, neither Radienz Defendants nor Awesome Product have returned the Withheld Goods nor offered to cover Rust-Oleum's loss.

## COUNT I – Conversion
### (Radienz Defendants)

44. Rust-Oleum incorporates the allegations in paragraphs 1-43 as if fully set forth herein.

45. At all relevant times, Rust-Oleum was the owner of, and had all legal right and title to, the physical property—the Withheld Goods.

46. At all relevant times, Rust-Oleum had a right to possess the Withheld Goods, including at the time Radienz Defendants purportedly sold the Withheld Goods to Awesome Products.

47. Radienz Defendants never had any right or title to, or interest in, the Withheld Goods.

48. Radienz Defendants control over, and purported sale of, the Withheld Goods has deprived Rust-Oleum of its right to use and enjoy the Withheld Goods.

49. Radienz Defendants control over, and purported sale of, the Withheld Goods was for Radienz Defendants own use and benefit, as, upon information and belief, the sale of Ludlow Facility from which Radienz Defendants profited included the sale of the Withheld Goods.

50. Rust-Oleum demanded Radienz Defendants return or replace the Withheld Goods.

51. Radienz Defendants have not returned or replaced the Withheld Goods despite Rust-Oleum's demand.

52.     Radienz Defendants sale of the Withheld Goods to Awesome Products was willful, wanton, and reckless in that it knew or reasonably should have known that it was not the lawful owner of the Withheld Products.

53.     Rust-Oleum has been damaged in an amount no less than the cost of the Withheld Goods plus its costs to replace the Withheld Goods with others of similar kind, and it lost productivity or future sales as a result of the loss of product.

WHEREFORE, plaintiff, RUST-OLEUM CORPORATION, respectfully requests that this honorable Court enter a judgment in its favor and against defendants Radienz Living Chicago, LLC f/k/a New U.S. Nonwovens, LLC, or Radienz Living, LLC f/k/a New U.S. Nonwovens, LLC, individually or jointly, for $562,108.25, plus such additional costs it accrues to replace the Withheld Goods, incidental costs, other consequential damages as have accrued through the date of judgment, and punitive damages.

## COUNT II – Conversion
### (Awesome Products)

54.     Rust-Oleum incorporates the allegations in the preceding paragraphs 1-43 as if fully set forth herein.

55.     At all relevant times, Rust-Oleum was the owner of, and had all legal right and title to, the physical property—the Withheld Goods.

56.     At all relevant times, Rust-Oleum had a right to possess the Withheld Goods, including at the time Radienz Defendants purportedly sold the Withheld Goods to Awesome Products.

57.     Radienz Defendants never had any right or title to, or interest in, the Withheld Goods.

58. Awesome Products has control over, and continues to control the Withheld Goods, thereby depriving Rust-Oleum of its right to use and enjoy the Withheld Goods.

59. Awesome Products' continued control over Withheld Goods is for Awesome Products' own use and benefit.

60. Rust-Oleum has demanded that Awesome Products return or replace the Withheld Goods.

61. Awesome Products has refused to return or replace the Withheld Goods despite having no right, title or ownership in the Withheld Goods.

WHEREFORE, plaintiff, RUST-OLEUM CORPORATION, respectfully requests that this honorable Court enter a judgment in its favor and against defendant Awesome Products, Inc. for $562,108.25, plus such additional costs it accrues to replace the Withheld Goods, incidental costs, and other consequential damages as have accrued through the date of judgment.

### COUNT III – Unjust Enrichment – In the Alternative
### (Radienz Defendants)

62. Rust-Oleum incorporates the allegations in the preceding paragraphs 1-43 as if fully set forth herein.

63. At all relevant times, Rust-Oleum was the owner of, and had all legal right and title to, the physical property—the Withheld Goods.

64. Radienz Defendants, without any legal right to, or ownership of, the Withheld Goods, were benefited by their unlawful sale of the Withheld Goods to Awesome Products.

65. Radienz Defendants appreciated the benefits of the sale because they received payment for goods that they did not pay for or own and such benefit was conferred at Rust-Oleum's expense because Radienz Defendants received monies to which Rust-Oleum is entitled to as the owner of the Withheld Goods.

66. Radienz Defendants retention of the benefits of the sale of the Withheld Goods without paying for the value of those goods would be inequitable.

WHEREFORE, plaintiff, RUST-OLEUM CORPORATION, respectfully requests that this honorable Court enter a judgment in its favor and against defendants, Radienz Living Chicago, LLC f/k/a New U.S. Nonwovens, LLC, or Radienz Living, LLC f/k/a New U.S. Nonwovens, LLC, individually or jointly, for $562,108.25, plus such additional costs it accrues to replace the Withheld Goods, incidental costs, and other consequential damages as have accrued through the date of judgment.

### COUNT IV – Unjust Enrichment – In the Alternative
### (Awesome Products)

67. Rust-Oleum incorporates the allegations in the preceding paragraphs 1-43 as if fully set forth herein

68. At all relevant times, Rust-Oleum was the owner of, and had all legal right and title to, the physical property—the Withheld Goods.

69. Upon information and belief, Awesome Products purchased the Withheld Goods as part of a larger purchase of the Ludlow Facility and possibly other assets previously owned by Radienz Defendants, and therefore, paid less than full value for the Withheld Goods.

70. Upon information and belief, Awesome Products appreciated the benefits of Radienz Defendants' unlawful sale of the Withheld Goods because they received the Withheld Goods for less than the full value.

71. Awesome Products is further benefited by its purchase of the Withheld Goods because it now stands in a position to resell the Withheld Goods back to Rust-Oleum, given that it will not return the Withheld Goods, or to a third-party.

72. Awesome Products retention of the benefit of its purchase of the Withheld Goods for less than full value is inequitable because it received goods that is now capable of reselling or using in its own production processes.

WHEREFORE, plaintiff, RUST-OLEUM CORPORATION, respectfully requests that this honorable Court enter a judgment in its favor and against defendant Awesome Products, Inc. for $562,108.25, plus such additional costs it accrues to replace the Withheld Goods, incidental costs, and other consequential damages as have accrued through the date of judgment.

### COUNT V – Bailment – In the Alternative
### (Radienz Defendants)

73. Rust-Oleum incorporates the allegations in the preceding paragraphs 1-43 as if fully set forth herein.

74. At all relevant times, Rust-Oleum was the owner of, and had all legal right and title to, the physical property—the Withheld Goods.

75. Rust-Oleum arranged transfer of the Withheld Goods to Radienz Defendants Ludlow Facility.

76. Radienz Defendants accepted the Withheld Goods.

77. At all relevant times, Rust-Oleum entrusted Radienz Defendants to keep the Withheld Goods safe and either: 1) return the Withheld Goods if Radienz Defendants were unable to provide assembly and manufacturing services; or 2) return the Withheld Goods for the agreed upon amount after Radienz Defendants completed the assembly and manufacturing process.

78. By accepting the Withheld Goods, Radienz Defendants had a duty to exercise ordinary care in safeguarding the Withheld Goods.

79. Radienz Defendants breached their duty to exercise ordinary care in safeguarding the Withheld Goods by:

12

    a. Failing to return the Withheld Goods prior to selling the Ludlow Facility and the Withheld Goods to Awesome Products;

    b. Refusing to return the Withheld Goods following Rust-Oleum's demand that the Withheld Goods be returned; and,

    c. Transferring the Withheld Goods to Awesome Products without Rust-Oleum's approval or consent.

80. As result of Radienz Defendants' breach of their duty, Rust-Oleum has been damaged in the amount equal to the purchase price of the Withheld Goods in addition to the costs it has incurred, or will incur to replace the Withheld Goods.

WHEREFORE, plaintiff, RUST-OLEUM CORPORATION, respectfully requests that this honorable Court enter a judgment in its favor and against defendants, Radienz Living Chicago, LLC f/k/a New U.S. Nonwovens, LLC, or Radienz Living, LLC f/k/a New U.S. Nonwovens, LLC, individually or jointly, for $562,108.25, plus such additional costs it accrues to replace the Withheld Goods, incidental costs, other consequential damages as have accrued through the date of judgment, and punitive damages.

### COUNT VI – Bailment – In the Alternative
### (Awesome Products)

81. Rust-Oleum incorporates the allegations in the preceding paragraphs 1-43 as if fully set forth herein.

82. At all relevant times, Rust-Oleum was the owner of, and had all legal right and title to, the physical property—the Withheld Goods.

83. Rust-Oleum arranged transfer of the Withheld Goods to Radienz Defendants Ludlow Facility.

84. Radienz Defendants accepted the Withheld Goods.

85. At all relevant times, Rust-Oleum entrusted Radienz Defendants to keep the Withheld Goods safe and either: 1) return the Withheld Goods if Radienz Defendants were unable to provide assembly and manufacturing services; or 2) return the Withheld Goods for the agreed upon amount after Radienz Defendants completed the assembly and manufacturing process.

86. Sometime in or around August or September of 2022, Awesome Products purchased and/or assumed control of the Ludlow Facility and all goods contained therein, including the Withheld Goods.

87. By purchasing and/or assuming control over the Ludlow Facility and all goods contained therein including the Withheld Goods, Awesome Products assumed a duty to exercise ordinary care in safeguarding the Withheld Goods.

88. Awesome Products breached their duty to exercise ordinary care in safeguarding the Withheld Goods by refusing to return the Withheld Goods following Rust-Oleum's demand that the Withheld Goods be returned.

89. As result of Awesome Products' breach of their duty, Rust-Oleum has been damaged in the amount at least equal to the purchase price of the Withheld Goods in addition to the costs it has incurred, or will incur to replace the Withheld Goods.

WHEREFORE, plaintiff, RUST-OLEUM CORPORATION, respectfully requests that this honorable Court enter a judgment in its favor and against defendant, Awesome Products, Inc. for $562,108.25, plus such additional costs it accrues to replace the Withheld Goods, incidental costs, other consequential damages as have accrued through the date of judgment, and punitive damages.

## JURY DEMAND

90. Rust-Oleum demands trial by jury on all issues so triable.

WHEREFORE, Rust-Oleum requests the following relief:

1. Judgment against the Defendants, jointly and severally, in the amount of 562,108.25, plus such additional costs it accrues to replace the Withheld Goods;

2. Punitive damages;

3. Judgment in favor of Rust-Oleum for all costs expended and incurred in connection with this action, pre-judgment interest, post-judgment interest, and reasonable attorneys' fees to the extent permitted under the law; and

4. Any and all further relief to which Rust-Oleum may be entitled.

        Respectfully submitted,

        */s/ Mary L. Bryson*
        _____

CHRISTOPHER R. CASHEN
MARY L. BRYSON
Dinsmore & Shohl LLP
100 West Main Street, Suite 900
Lexington, KY 40507
T: (859) 425-1000
F: (859) 425-1099
christopher.cashen@dinsmore.com
mary.bryson@dinsmore.com

ANTHONY J. MONACO (*Pro Hac Vice to be filed*)
BRYAN E. ROGERS (*Pro Hac Vice to be filed*)
Swanson, Martin & Bell, LLP
330 N. Wabash, Suite 3300
Chicago, Illinois 60611
Telephone: (312) 321-9100
Facsimile: (312) 321-0990
amonaco@smbtrials.com
berogers@smbtrials.com

*Counsel for Rust-Oleum Corporation*